IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LINDSAY SHERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:14-CV-01661 |
| | ) | |
| v. | ) | JUDGE ALETA A. TRAUGER |
| | ) | |
| | ) | JURY DEMANDED |
| CBRE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.01(b), Defendant CBRE, Inc., ("CBRE"), submits this Statement of Material Facts in support of its Motion for Summary Judgment, as follows:

1.      Lindsay Sherman began working for CBRE as a Finance Manager on the company's Nissan North America (hereinafter "Nissan") account on October 8, 2012.

Citation to the Record:  Declaration of Vincent Dunavant ("Dunavant Dec."), at ¶15; Exhibit 2, CBRE00004-6.

Disputed_____      Undisputed ____**X**_____

If disputed, proper citation to the record.

2.      Ms. Sherman was not an employee of Nissan.

Citation to the Record:  Deposition of Lindsay Sherman ("Sherman Dep."), June 29, 2015, at 69: 11.

Disputed_____      Undisputed ___**X**_____

1

If disputed, proper citation to the record.


3.    Ms. Sherman's duties included managing budgeting and forecasting processes, financial reporting to the client (Nissan), as well as keeping Vince Dunavant, the Managing Director who oversaw the Nissan account for CBRE, informed on all aspects of the financial operation.

Citation to the Record:  Dunavant Dec., at ¶¶3, 4.

Disputed_____    Undisproved ____**X**_____

If disputed, proper citation to the record.


4.    Ms. Sherman did not supervise any CBRE employees.

Citation to the Record:  Sherman Dep, at 200:3-9.

Disputed_____    Undisputed ___**X**_____

If disputed, proper citation to the record.


5.    Ms. Sherman's initial supervisor was Rob Jacobs, CBRE's Director of Operations on the Nissan account.

Citation to the Record:  Dunavant Dec., at ¶5.

Disputed_____    Undisputed ____**X**____

If disputed, proper citation to the record.

6.      Beginning in May of 2013, Ms. Sherman began reporting directly to Mr. Dunavant.

Citation to the Record:  Dunavant Dec., at ¶5; *see also* Sherman Dep., at 240:14-241:2.

Disputed_____      Undisputed ___**X**_____

If disputed, proper citation to the record.


7.      The CBRE management team working on the Nissan account was embedded with Nissan employees at Nissan's North American headquarters in Franklin, Tennessee.

Citation to the Record:  Dunavant Dec., at ¶3.

Disputed_____      Undisputed ___**X**_____

If disputed, proper citation to the record.


8.      The establishment of the "pre-bill" account referenced in Ms. Sherman's Amended Complaint was authorized by Nissan.

Citation to the Record:  Amended Complaint, at ¶8.

Disputed _____      Undisputed ___**X**____

If disputed, proper citation to the record.


9.      Ms. Sherman testified she had no problem with the pre-bill account being set up.

Citation to the Record:  Sherman Dep., at 108:8-13.

Disputed_____      Undisputed ___**X**_____

If disputed, proper citation to the record.

3

10. Ms. Sherman is not alleging there was any kind of improper charging or discrepancy between Nissan and CBRE related to the pre-bill account.

Citation to the Record: Sherman Dep., at 148:3-8.

Disputed ___**X**_____ Undisputed_____

If disputed, proper citation to the record.

**Plaintiff alleges and states in her deposition that improper charging by CBRE on Nissan's pre-bill account occurred when charges were applied to the pre-bill account prior "earlier than they should have been," and that she believed "wrongdoing" occurred in "getting these vendors to send invoices earlier, before the service was actually performed" because CBRE was recording revenue on their income statement before they actually should have received the revenue." (Deposition of Plaintiff ("Pltf. Dep.") at 110: 8-13; 146: 19-24).**

11. Ms. Sherman is not alleging any money from the Nissan pre-bill account was misappropriated by CBRE.

Citation to the Record: Sherman Dep., 110:8-19; 147:5-15.

Disputed ___**X**_____ Undisputed_____

If disputed, proper citation to the record.

**Plaintiff alleges and states in her deposition that misappropriation occurred on the pre-bill account by CBRE when charges were applied to the pre-bill account prior "earlier than they should have been," and that she believed "wrongdoing" occurred in "getting these vendors to send invoices earlier, before the service was actually performed" because CBRE was recording revenue on their income statement before they actually should have received the revenue." (Pltf. Dep. at 110: 8-13; 146: 19-24).**

12. Ms. Sherman is not alleging CBRE misled Nissan with respect to the pre-bill account.

Citation to the Record: Sherman Dep., 147:5-15.

4

Disputed ___**X**_____          Undisputed_____

If disputed, proper citation to the record.

**Plaintiff was asked whether, "*other than what you've just told me about CBRE prebilling vendors*," (Pltf. Dep. at 147: 5-15) she alleges that CBRE misled Nissan in how the pre-bill account. Plaintiff does allege that CBRE misled Nissan in how the pre-bill was to be handled when charges were applied to the pre-bill account prior "earlier than they should have been," and that she believed "wrongdoing" occurred in "getting these vendors to send invoices earlier, before the service was actually performed" because CBRE was recording revenue on their income statement before they actually should have received the revenue." (Pltf. Dep. at 110: 8-13; 146: 19-24).**

13.     Ms. Sherman is not alleging CBRE lied to Nissan regarding the pre-bill account.

Citation to the Record:  Sherman Dep., 147:5-15.

Disputed __**X**_____          Undisputed_____

If disputed, proper citation to the record.

**In her deposition, Plaintiff was asked whether she was alleging, "*other than the Pre-bill account,*" whether CBRE lied to Nissan. (Pltf. Dep. at 147: 5-15). Plaintiff alleges that CBRE did lie to Nissan *regarding the pre-bill account* when charges were applied to the pre-bill account prior "earlier than they should have been," and that she believed "wrongdoing" occurred in "getting these vendors to send invoices earlier, before the service was actually performed" because CBRE was recording revenue on their income statement before they actually should have received the revenue." (Pltf. Dep. at 110: 8-13; 146: 19-24).**

14.     Ms. Sherman is not alleging CBRE stole money from Nissan from the pre-bill account.

Citation to the Record:  Sherman Dep., 147:5-15.

Disputed_____ Undisputed ___**X**_____

If disputed, proper citation to the record.

15. The last monies from the pre-bill account were spent on February 8, 2013.

Citation to the Record: Dunavant Dec., at ¶15; Exhibit 3, Plaintiff00392.

Disputed_____ Undisputed __**X**_____

If disputed, proper citation to the record.


16. During her deposition, Ms. Sherman testified as follows regarding what she told Mr. Dunavant about the pre-bill account: "That I did not want this situation occurring – or that scenario set up again going forward with our POs because this was at the end of December, the client's fiscal year end was at the end of March, and so at that time they could potentially set up the same scenario again where we would keep the – this balance on our balance sheet and run that total each month."

Citation to the Record: Sherman Dep., at 96:22-97:6.

Disputed_____ Undisputed ___**X**_____

If disputed, proper citation to the record.


17. The statement from Ms. Sherman's deposition quoted in Paragraph 16 of Defendant's Statement of Undisputed Material Facts is all Ms. Sherman recalls saying to Mr. Dunavant about the pre-bill account.

Citation to the Record: Sherman Dep., at 97:7-11.

Disputed_____ Undisputed ____**X**____

If disputed, proper citation to the record.

18.     Ms. Sherman's complaints to Ms. McDonald regarding the pre-bill account related to the difficulty of administering the account itself.

Citation to the Record:   Deposition of Marianne McDonald ("McDonald Dep.), September 9, 2015, at 32:20-23.

Disputed ___**X**_____   Undisputed_____

If disputed, proper citation to the record.

**In her deposition, Plaintiff testified that she told McDonald how the "the account was set up and why we – or why it was claimed for us to do it this way" (Pltf. Dep. at. 97: 16-21). Plaintiff discussed the pre-bill account with Mrs. McDonald and how the CBRE Managing Director requested invoices be applied to the account prior to the service being fully completed/performed so that no balance remained at CBRE's year-end.  This discussion was held with Mrs. McDonald during monthly phone call touch point sessions that were scheduled.  During that same touch point session, Plaintiff asked Mrs. McDonald if bi-weekly phone call meetings could be scheduled with her in order to discuss other financial occurrences on the Nissan GCS account (Pltf. Aff. ¶¶ 4-5).**

19.     Ms. Sherman never complained to Ms. McDonald about CBRE "zeroing out" the account at the end of the 2012 fiscal year.

Citation to the Record:  McDonald Dep., at 44:10-16.

Disputed ___**X**_____   Undisputed_____

If disputed, proper citation to the record.

**In her deposition, Plaintiff testified that she told McDonald how the "the account was set up and why we – or why it was claimed for us to do it this way" (Pltf. Dep. at 97: 16-21). Plaintiff expressed concern during the February-March 2013 monthly phone call touch point sessions with Mrs. McDonald how the pre-bill account was handled (by "zeroing out" the funds at CBRE's year-end).  During that same touch point session, Plaintiff requested that Mrs. McDonald set up bi-weekly phone conferences with Plaintiff in order to discuss other financial occurrences on the Nissan GCS account (Pltf. Dep. at 97: 12-21; Pltf. Aff. ¶¶ 4-5).**

7

20.     Ms. Sherman never raised a concern to Ms. McDonald that some of the pre-billing to Nissan to use up the $1.2 million in the pre-bill account had not been approved by Nissan.

Citation to the Record:  McDonald Dep., at 44:17-22; *see also* Sherman Dep., at 97:12-98:4.

Disputed ___**X**_____  Undisputed_____

If disputed, proper citation to the record.

**During that same phone call discussion held in February-March 2013 timeframe with Mrs. McDonald, Plaintiff raised the concern about how some of the pre-bill funds were never approved by Nissan.  During that same touch point session, Plaintiff asked Mrs. McDonald if bi-weekly phone call meetings could be scheduled with her in order to discuss other financial occurrences on the Nissan GCS account. ( Pltf. Aff. ¶¶ 4-5)**


21.     Nissan receives a rebate on certain brokerage commissions payable to CBRE for real estate transactions handled by CBRE for Nissan.

Citation to the Record:  Dunavant Dec., at ¶7.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.


22.     These commission rebate funds are credited to a "PRV" account, where they are held on behalf of Nissan until such time as they are disbursed at Nissan's direction.

Citation to the Record:  Dunavant Dec., at ¶7.

Disputed_____     Undisputed __**X**_____

If disputed, proper citation to the record.

23.     Commission rebate funds are held on behalf of Nissan until such time as they are disbursed at Nissan's direction.

Citation to the Record:  Dunavant Dec., at ¶7.

Disputed_____     Undisputed __**X**_____

If disputed, proper citation to the record.


24.     The funds in the PRV account are Nissan's but are managed by CBRE for Nissan's benefit.  This seems like it should be undisputed?

Citation to the Record:  Dunavant Dec., at ¶7.

Disputed _____     Undisputed ___**X**_____

If disputed, proper citation to the record.


25.     The commission rebate owed to Nissan on a 2011 real estate transaction which CBRE brokered for Nissan was inadvertently miscalculated by approximately $175,000.

Citation to the Record:  Deposition of Vincent Dunavant ("Dunavant Dep."), August 20, 2015, at 67:24-68:12; Dunavant Dec., at ¶8.

Disputed_____     Undisputed __**X**_____

If disputed, proper citation to the record.


26.     CBRE discovered the commission rebate miscalculation and informed Nissan of the error.

Citation to the Record:  Dunavant Dep., at 68:13-15; Dunavant Dec., at ¶8.

Disputed __**X**_____ Undisputed_____

If disputed, proper citation to the record.

9

**CBRE did not inform Nissan of the error until a meeting in August 2013. When Plaintiff told Mr. Delauter about the miscalculation prior to August 2013, Mr. Delauter reacted as if he was not aware of the information. The meeting of which Plaintiff was aware, took place in August 2013, in which Nissan was informed by CBRE included the Finance Manager and Brian Delauter, Director of Corporate Services for Nissan North America. (Pltf. Dep. at. 62: 2-7; 151: 15-25; 152:1-11; 159: 13-18).**

27.     In March 2013, Nissan's account was credited $174,999.07.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 5, CBRE01050-1052; Sherman Dep., Exhibit 5.

Disputed ___**X**_____ Undisputed_____

If disputed, proper citation to the record.

**Plaintiff alleges the credit had not been applied to Nissan's account at that time, and that the credit would not be applied to the Nissan account until the "broker had another deal." She did not think the account would be replenished until future deals came to the brokers to actually replenish it to that account." (Pltf. Dep. at 158: 3-15; 167: 1-5; 181: 10-18).**

28.     The commission rebate error totaled $174,999.07.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 5, CBRE01050-1052; Sherman Dep., Exhibit 5.

Disputed_____     Undisputed __**X**_____

If disputed, proper citation to the record.

29.     Ms. Sherman alleges that shortly before she was terminated, she learned CBRE still owed Nissan $124,000 out of the approximately $175,000 which was incorrectly calculated in 2011.

Citation to the Record:  Doc. No. 12, Am. Compl,. at ¶13.

10

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.

30.     Ms. Sherman believed that Nissan's PRV account was not credited until the CBRE brokers' compensation was reduced by an amount equal to the excess commission they were paid in 2011.

Citation to the Record:  Sherman Dep., at 158:3-19.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.

31.     Although the brokers still owed CBRE the money internally, Nissan had already been fully reimbursed in March 2013.

Citation to the Record:  Dunavant Dec., at ¶¶8, 15; Exhibit 5, CBRE01050-1052; Sherman Dep., Exhibit 5.

Disputed __**X**_____ Undisputed_____

If disputed, proper citation to the record.

**Plaintiff was not aware that Nissan had been fully reimbursed the funds internally. Plaintiff alleges the credit had not been applied to Nissan's account at that time, and that the credit would not be applied to the Nissan account until the "broker had another deal." She did not think the account would be replenished until future deals came to the brokers to actually replenish it to that account." (Pltf. Dep. at 158: 3-15; 167: 1-5; 181: 10-18). The monthly reconciliation document still showed an outstanding balance of $124,000 as of August 2013 (Pltf. Dep. at 158: 3-15; 167: 1-5; at 181: 10-18; Pltf. Dep. Exhibit 4)**

32.     Brian Delauter is the Director of Corporate Services for Nissan.

Citation to the Record:  Deposition of Brian Delauter ("Delauter Dep."), October 13, 2015, at 7:24-8:1.

Disputed_____     Undisputed __**X**_____

If disputed, proper citation to the record.

33.     Ms. Sherman claims she told Mr. Delauter, that CBRE owed Nissan $124,000 in August 2013.

Citation to the Record:  Sherman Dep., at 61:18-62:10, 65:7-15, 159:13-160:6.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.

34.     Ms. Sherman called Nissan's Whistleblower Hotline regarding the PRV account on or about August 12, 2013.

Citation to the Record:  Doc. No. 12, Am. Compl., at ¶18.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.

35.     Ms. Sherman did not tell anyone at CBRE that she called Nissan's Whistleblower Hotline.

Citation to the Record:  Sherman Dep., at 104:14-19.

Disputed_____     Undisputed __**X**_____

If disputed, proper citation to the record.

36.     Ms. Sherman's only complaint to Ms. McDonald about the PRV account was regarding how long it took to correct the rebate calculation error.

Citation to the Record:  McDonald Dep., at 22:4-7.

Disputed ___**X**_____ Undisputed_____

If disputed, proper citation to the record.

**Plaintiff complained on multiple occasions (once during Mrs. McDonald's scheduled visit back during April-May 2013 timeframe and during the bi-weekly scheduled phone calls with Mrs. McDonald) that CBRE owed an outstanding balance on a rebate deal back from FY2011 and the client was not aware of the miscalculation (Pltf. Dep. at 226: 14-21; Pltf. Aff ¶ 5).**

37.     Ms. Sherman never discussed her concerns related to the PRV account with any senior or supervisory officials at CBRE before calling Nissan's Whistleblower Hotline in August 2013.

Citation to the Record:  Sherman Dep., at 185:23-190:23; Dunavant Dep., at 74:6-9.

Disputed __**X**_____ Undisputed_____

If disputed, proper citation to the record.

**Plaintiff was not asked this specific question in her deposition. Plaintiff discussed her concerns regarding the PRV account with Mrs. McDonald prior to calling the Nissan's Whistleblower hotline (once during Mrs. McDonald's scheduled visits back during April-May 2013 timeframe and during the bi-weekly scheduled phone calls with Ms. McDonald) (Pltf. Dep. at 226: 14-21; Pltf. Aff. ¶ 4-5).**

38.     Ms. Sherman testified in her deposition that Mr. Dunavant began excluding her from meetings with the client (Nissan) starting at the end of June or early July 2013 because she "started questioning a lot of stuff for the billing."

Citation to the Record:  Sherman Dep., at 36:13-37:9.

Disputed ___**X**_____ Undisputed _____

If disputed, proper citation to the record.

**Disputed. Plaintiff testified in her deposition that Mr. Dunavant began excluding her from meetings around the time she started questioning about the billing, but not**

13

**necessarily "because" she started questioning about the billing. (Pltf. Dep., at 36: 13-37: 9)**

39.    Ms. Sherman testified in her deposition that she was "taken off of financial information and other meetings with the client because [Mr. Dunavant] believed that [she] could not be trusted."

Citation to the Record:  Sherman Dep., at 134:23-135:17.

Disputed_____    Undisputed ___**X**_____

If disputed, proper citation to the record.


40.    Ms. Sherman testified in her deposition that Mr. Dunavant "did not like the fact that [she] left at different times during the week to go for appointments that [she] had because [she] was pregnant."

Citation to the Record:  Sherman Dep., at 140:12-25.

Disputed_____    Undisputed __**X**_____

If disputed, proper citation to the record.


41.    Ms. Sherman testified in her deposition she could only recall one instance where Mr. Dunavant became upset about her leaving the office for an OB/GYN appointment, and that was because she had a report due that particular day.

Citation to the Record:  Sherman Dep., at 144:3-22.

Disputed_____    Undisputed ___**X**_____

If disputed, proper citation to the record.

42.    Mr. Dunavant never said anything to Ms. Sherman specifically about her leaving work due to doctors' appointments.

14

Citation to the Record: Sherman Dep., at 143:8-17.

Disputed __**X**_____ Undisputed_____

If disputed, proper citation to the record.

**Mr. Dunavant complained to Plaintiff concerning her required OBGYN doctors' visit that in June 2013, for which she had to leave work early. (Pltf. Dep. at 140: 16-25; at 143: 13-17.**

43. Ms. Sherman claims Mr. Dunavant asked her to leave the Nissan account and take a demotion within CBRE.

Citation to the Record: Sherman Dep., at 139:25-140:3.

Disputed_____ Undisputed ___**X**_____

If disputed, proper citation to the record.

44. On July 25, 2013, Ms. McDonald sent the email attached as Exhibit 6 to the Motion for Summary Judgment.

Citation to the Record: Declaration of Marianne McDonald ("McDonald Dec."), at ¶10; Exhibit 6, CBRE00094.

Disputed_____ Undisputed __**X**_____

If disputed, proper citation to the record.

45. In this July 25, 2013 email attached as Exhibit 6 to Defendant's Motion for Summary Judgment, Ms. McDonald informed Ms. Sherman about a position within CBRE and stated: "I AM NOT SAYING YOU HAVE TO MAKE A CHANGE. Just wanted you to know about the opportunity if you are interested."

15

Citation to the Record:  McDonald Dec., at ¶10; Exhibit 6, CBRE00094 (emphasis in original).

Disputed_____    Undisputed __**X**_____

If disputed, proper citation to the record.


46.     On July 25, 2013, Ms. Sherman participated in the email exchange attached as Exhibit 7 to the Motion for Summary Judgment regarding the job opportunity Ms. McDonald brought to her attention.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 7, CBRE00857-858.

Disputed_____    Undisputed ___**X**_____

If disputed, proper citation to the record.


47.     On July 26, 2013, Ms. Sherman participated in the email exchange with Mr. Dunavant attached as Exhibit 8 to the Motion for Summary Judgment.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 8, CBRE00095-98.

Disputed_____    Undisputed ___**X**_____

If disputed, proper citation to the record.


48.     A female, Rebecca Edwards, replaced Lindsay Sherman as CBRE's Finance Manager on the Nissan North America account following her termination.

Citation to the Record:  Dunavant Dec., at ¶11.

Disputed_____    Undisputed __**X**_____

If disputed, proper citation to the record.

16

49.    Ms. Sherman's evaluation completed by Mr. Dunavant on July 15, 2013, included

a section on R.I.S.E. Values.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 9, CBRE00155-159; Sherman
Dep., Exhibit 13.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.


50.    Ms. Sherman participated in the email exchange attached as Exhibit 10 to the

Motion for Summary Judgment.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 10, CBRE000963-965.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.


51.    Ms. Sherman participated in the email exchange attached as Exhibit 11 to the

Motion for Summary Judgment.

Citation to the Record:  McDonald Dec., at ¶10; Exhibit 11, CBRE00137-140; Sherman
Dep., Exhibit 7.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.


52.    Ms. Sherman participated in the email exchange attached as Exhibit 12 to the

Motion for Summary Judgment.

Citation to the Record:   Dunavant Dec., at ¶15; Exhibit 12, CBRE00141-143; Sherman
Dep., Exhibit 8.

Disputed_____     Undisputed __**X**_____

17

If disputed, proper citation to the record.

53.     Ms. Sherman participated in the email exchange attached as Exhibit 13 to the Motion for Summary Judgment.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 13, CBRE00144-146; Sherman Dep., Exhibit 9.

Disputed_____        Undisputed __**X**_____

If disputed, proper citation to the record.

54.     Ms. Sherman participated in the email exchange attached as Exhibit 14 to the Motion for Summary Judgment.

Citation to the Record:  Sherman Dep., at 235:18-236:12; Exhibit 14, CBRE01085-1086; Sherman Dep. Exhibit 11.

Disputed_____        Undisputed ___**X**_____

If disputed, proper citation to the record.

55.     Ms. Sherman participated in the email exchange attached as Exhibit 15 to the Motion for Summary Judgment.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 15, CBRE001010-1011.

Disputed_____        Undisputed ___**X**_____

If disputed, proper citation to the record.

56.     Ms. Sherman participated in the email exchange attached as Exhibit 16 to the Motion for Summary Judgment.

18

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 16, CBRE01003-1004.

Disputed_____        Undisputed ___**X**_____

If disputed, proper citation to the record.


57.     Ms. Sherman participated in the email exchange attached as Exhibit 17 to the Motion for Summary Judgment.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 17, CBRE001007.

Disputed_____        Undisputed ___**X**_____

If disputed, proper citation to the record.


58.     Ms. Sherman participated in the email exchange attached as Exhibit 18 to the Motion for Summary Judgment.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 18, CBRE00985-988.

Disputed_____        Undisputed __**X**_____

If disputed, proper citation to the record.


59.     In the email exchange attached as Exhibit 18 to the Motion for Summary Judgment, Mr. Jacobs explained to Ms. Sherman that both he and Mr. Dunavant needed to be aware of any requests for information made by Nissan officials because communications to Brian Delauter and Phil Robertson were "more than just financial" and involved "managing a client relationship" for which he and Mr. Dunavant were responsible.

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 18, CBRE00985-988.

Disputed _____        Undisputed ___**X**_____

If disputed, proper citation to the record.

60.     Ms. Sherman participated in the email exchange attached as Exhibit 19 to the Motion for Summary Judgment.

Citation to the Record: Dunavant Dec., at ¶15; Exhibit 19, CBRE001032-1039.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.

61.     Ms. Sherman acknowledged that she disobeyed Mr. Dunavant's instructions that she refrain from *ex parte* communications with the client when she discussed the $124,000 credit she believed Nissan was owed, saying: "I felt like they needed to know."

Citation to the Record:  Sherman Dep., at 190:24-191:7.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.

62.     On June 12, 2013, Ms. Sherman and Mr. Dunavant had a meeting in a glass conference room at Nissan's headquarters on a floor surrounded by work stations occupied by CBRE and Nissan employees.

Citation to the Record:  Sherman Dep., at 242:2-15.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.

63. Ms. Sherman testified that people could only hear the discussion taking place inside the conference room when the door was closed if the participants were "yelling at each other."

Citation to the Record: Sherman Dep., at 242:16-21.

Disputed _____    Undisputed ____**X**____

If disputed, proper citation to the record.


64. Gena Smarr, a CBRE employee who worked at Nissan's headquarters during Ms. Sherman's employment, testified that she "heard" Ms. Sherman yelling while at her cubicle outside the conference room.

Citation to the Record: Deposition of Gena Smarr ("Smarr Dep.), August 12, 2015, at 47:1-48:9.

Disputed _____    Undisputed ___**X**_____

If disputed, proper citation to the record.


65. Ms. Smarr did not hear Mr. Dunavant during his June 12, 2013 meeting with Ms. Sherman in the glass conference room.

Citation to the Record: Smarr Dep., at 48:2-3.

Disputed_____    Undisputed ___**X**_____

If disputed, proper citation to the record.

66. On June 13, 2013, Ms. Sherman sent an email to Ms. McDonald, attached as Exhibit 20 to the Motion for Summary Judgment, regarding her June 12, 2013 meeting with Mr. Dunavant.

Citation to the Record: McDonald Dec., at ¶10; Exhibit 20, CBRE00149; Sherman Dep., Exhibit 12.

Disputed_____ Undisputed __**X**_____

If disputed, proper citation to the record.

67.     In the June 12, 2013 email Ms. Sherman sent to Ms. McDonald attached as Exhibit 20 to the Motion for Summary Judgment, Ms. Sherman told Ms. McDonald that her meeting "went very badly" and stated she was "out of line" in the way she spoke to Mr. Dunavant.

Citation to the Record: McDonald Dec., at ¶10; Exhibit 20, CBRE00149; Sherman Dep., Exhibit 12.

Disputed_____ Undisputed ___**X**_____

If disputed, proper citation to the record.

68.     On June 18, 2013, Mr. Dunavant sent an email to Ms. McDonald, attached as Exhibit 21 to the Motion for Summary Judgment, regarding a meeting he had with Ms. Sherman.

Citation to the Record: Dunavant Dec., at ¶15; Exhibit 21, CBRE00868.

Disputed_____ Undisputed __**X**_____

If disputed, proper citation to the record.

69.     In this June 18, 2013 email attached as Exhibit 21 to the Motion for Summary Judgment, Mr. Dunavant wrote: "[Ms. Sherman] opened the meeting by sincerely apologizing for her behavior at our last meeting…She said she was very sorry for having lost her temper and composure and that she was very embarrassed by her actions."

22

Citation to the Record:  Dunavant Dec., at ¶15; Exhibit 21, CBRE00868.

Disputed_____        Undisputed ___**X**_____

If disputed, proper citation to the record.

70.     On August 9, 2013, Ms. Sherman and Mr. Dunavant met in a conference room at Nissan's headquarters; Ms. McDonald participated by telephone.

Citation to the Record:  Sherman Dep., at 17:24-18:14; Dunavant Dep., at 53:9-14, 55:10-12.

Disputed_____        Undisputed ___**X**_____

If disputed, proper citation to the record.

71.     During this August 9, 2013 meeting, Ms. Sherman called Mr. Dunavant a "liar."

Citation to the Record:  Sherman Dep. at 268:24-269:7; Dunavant Dep., 53:9-14; McDonald Dec., at ¶7.

Disputed_____        Undisputed __**X**_____

If disputed, proper citation to the record.

72.     Following this August 9, 2013 meeting, Ms. Sherman told Ms. Smarr the meeting "didn't go well."

Citation to the Record:  Smarr Dep., at 45:4-9.

Disputed __**X**_____ Undisputed_____

If disputed, proper citation to the record.

**Plaintiff did not talk about the meeting held with Mr. Dunavant and Mrs. McDonald held on Friday, August 9th directly with Mrs. Smarr. (Pltf. Aff:¶6)**

73.     Following this August 9, 2013 meeting, Ms. Sherman told Ms. Smarr that she was concerned she was going to be terminated.

Citation to the Record:  Smarr Dep., at 45:4-9.

Disputed__**X**_____     Undisputed_____

If disputed, proper citation to the record.

**Plaintiff did not talk about the meeting held with Mr. Dunavant and Mrs. McDonald held on Friday, August 8th directly with Mrs. Smarr. (Pltf. Aff.: ¶6)**


74.     Mr. Dunavant consulted with Ms. Kerman and Ms. McDonald regarding Ms. Sherman's termination following the August 9, 2013 meeting with Ms. Sherman.

Citation to the Record:  Dunavant Dep., at 23:16-22; McDonald Dep., at 47:18-48:5; Deposition of Sandy Kerman ("Kerman Dep.), September 9, 2015, at 25:20-22; McDonald Dec., at ¶¶9, 10; Exhibit 22, Plaintiff00066-67.

Disputed_____     Undisputed ___**X**_____

If disputed, proper citation to the record.


75.     Ms. Kerman agreed with the decision to terminate Ms. Sherman.

Citation to the Record:  Kerman Dep., at 25:23-26:15.

Disputed_____     Undisputed__**X**_____

If disputed, proper citation to the record

**Undisputed that Kerman stated that in her deposition.**


76.     Ms. McDonald agreed with the decision to terminate Ms. Sherman.

Citation to the Record:   McDonald Dep., at 47:18-48:5; McDonald Dep., at ¶¶8-10;

Exhibit 22, Plaintiff00066-67.

Disputed ___**X**_____ Undisputed_____

If disputed, proper citation to the record

**McDonald stated in an email to Dunavant on July 11, 2013 that while Plaintiff "certainly had her challenges, she has done an amazing job of coming up to speed quickly, earning the trust of the client and cleaning up some sticky issues for the Nissan account." She advised Dunavant that CBRE needed to plan to mentor Plaintiff, as well as offer Plaintiff more support and "backing" from Dunavant, Jacobs, and McDonald. (Exhibit No. 3, CBRE0000865).**

77.     Ms. Sherman was terminated on August 14, 2013.

Citation to the Record:  Sherman Dep., at 14:1-9.

Disputed_____     Undisputed __**X**_____

If disputed, proper citation to the record.


Respectfully submitted;


**ALLMAN & ASSOCIATES**

s/ Andy L. Allman_____
Andy L. Allman, BPR No. 17857
R. Patrick Parker, BPR No. 16847
131 Saundersville Rd., Suite 110
Hendersonville, Tennessee 37075
Telephone: (615) 933-0110
Facsimile: (615) 265-8766
andy@andylallman.com

*Attorneys for Plaintiff*

25

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgement was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system on this the 18th day of December, 2015 upon:

M. Reid Estes, Jr.
Darrell L. West
Joshua Burgener
424 Church Street, Suite 1401
Nashville, Tennessee 37219

                                              s/  Andy L. Allman